UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL PAUL PARKINSON, | § | |
| TDCJ #01934760, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0043 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Michael Paul Parkinson, who proceeds *pro se*, has filed a petition for a federal writ of habeas corpus (Dkt. 1) and a supporting memorandum (Dkt. 3) seeking relief from a state court conviction. Respondent Lorie Davis filed a motion for summary judgment (Dkt. 8) and a copy of the state court records (Dkt. 9, Dkt. 10). Petitioner filed a response (Dkt. 11). The motion is ripe for decision. Having now considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that summary judgment should be **granted** for Respondent and that the petition should be **dismissed**.

## I.   BACKGROUND

### A.   Procedural Background

Petitioner was convicted of four counts of aggravated sexual assault of a child. He was tried and sentenced before a jury in the 239th Judicial District Court for Brazoria

County, Texas, Hon. Patrick Sebasta presiding, Case No. 72075 (Dkt. 9-6, at 72-73).[1] He received forty-five years for each count, with Counts 1-3 to run concurrently and Count 4 to run consecutively with Counts 1-3 (*id*. at 72).

Parkinson appealed to the First Court of Appeals, Case No. 01-14-00476-CR, and the appellate court affirmed on June 11, 2015. *Parkinson v. State*, No. 01-14-0476-CR, 2015 WL 3637983 (Tex. App.–Hou. [1st Dist.], 2015, no pet.); *see* Dkt. 9-1. Parkinson did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Parkinson then executed a *pro se* state habeas application on June 14, 2016 (Dkt. 10-26, at 9-31). On September 26, 2016, the trial court entered findings of fact and conclusions of law recommending that relief be denied (Dkt. 10-26, at 95-98, 104).[2] On January 11, 2017, the Texas Court of Criminal Appeals denied the application on the trial court's findings without written order (Dkt. 10-21).

On February 5, 2017, Petitioner timely executed a *pro se* petition for writ of habeas corpus (Dkt. 1) in these proceedings.

### B. Factual Background

Petitioner was convicted of four counts of aggravated sexual assault of a child. The victim for all four counts was Parkinson's biological daughter, who was then eleven years old (Dkt. 9-1, at 2). At trial, the State relied on testimony from three witnesses: the victim, the victim's mother (Petitioner's ex-wife), and Investigator Francine Vargas. *See*

---

[1]     Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

[2]     On the Court's ECF system, the pages from the five-page order are out of sequence. *See* Dkt. 10-26 at 95-98 (pages 1 through 4); *id*. at 104 (page 5, executed by Judge Sebasta).

Dkt. 9-7 (master index); Dkt. 9-10, at 97-127 (closing arguments)).  The State also relied on State's Exhibit 2, which contained Petitioner's redacted medical records from the Veterans' Administration Medical Center.  *See* Dkt. 10-11, at 12; Dkt. 10-12; Dkt. 10-13, at 1-5 (collectively, State's Exhibit 2).  The State's brief on direct appeal summarized the relevant facts as follows:

> E.P. was 11 years old when appellant, her biological father, molested her on four separate occasions. (RR III 165-66, 168-89). On these occasions, appellant would "French kiss" E.P., rub her vagina with his hand, place E.P.'s hand on his penis, and attempt to have vaginal intercourse with E.P. (RR III 174-202). Appellant also attempted to force E.P. to perform oral sex on him one of the times he assaulted her. (RR III 202-09).

> After the fourth assault, E.P. outcried to her grandmother. (RR III 211). E.P., her mother, and her grandmother confronted appellant who immediately apologized to E.P. and moved out of the family home. (RR III 213; RR IV 21-24). Appellant checked in to the Veteran's Administration Medical Center. (RR IV 60). While there, appellant received treatment for suicidal thoughts and depression and admitted to sexually assaulting E.P. (RR VI State's Exhibit 1; RR VII State's Exhibit 2). These admissions were documented in appellant's medical records. (RR VI State's Exhibit 1). A redacted copy of these records was admitted into evidence as State's Exhibit 2 over appellant's Rule 403 and "physician-patient privilege" objections. (RR IV 6-14; RR VII State's Exhibit 2).

> In addition to requesting appellant leave the family residence, E.P.'s mother contacted law enforcement. (RR IV 25-26). Investigator Francine Vargas responded and inquired into the allegations made by E.P. (RR IV 56-59). While testifying at trial, Vargas recited to the jury the admissions made by appellant in his medical records, which had previously been admitted as State's Exhibit 2.

(Dkt. 9-5, at 8-9).[3]

---

[3]     Neither the direct appeal court nor the state habeas court provided a detailed recitation of the facts.  Parkinson's appellate brief recites substantially the same facts as those above.  *See* Dkt. 9-4, at 6-11.

Parkinson's direct appeal raised one issue, namely, that the trial court had erred by allowing Investigator Vargas' testimony concerning the medical records in State's Exhibit 2 because the testimony involved matters outside her expertise (Dkt. 9-4, at 12-23). The appellate court overruled the issue because Parkinson's trial counsel had not preserved error at trial (Dkt. 9-1, at 3 (citing TEX. R. APP. P. 33.1(a) & 38.1(i); TEX. R. EVID. 103(a); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005)).

On state habeas review, Parkinson raised eight claims for relief, including ineffective assistance of trial counsel (Dkt. 10-26, at 9-31). Trial counsel filed an affidavit responding to the ineffective assistance of counsel claims and, specifically, to seven issues designated by the court (*id*. at 99-101). The trial court then recommended denial of habeas relief. When rejecting Petitioner's ineffective assistance of trial counsel claims, the court relied heavily on counsel's affidavit and concluded that "the Applicant's trial counsel was not ineffective, in that, there is no evidence that the alleged deficient performance of the Applicant's trial counsel in any way prejudiced his case" (*id*. at 98). Regarding all other claims raised in the application, the court determined, "the application does not otherwise contain sworn allegations of fact which if true, would render Applicant's confinement illegal, nor does it contain any other unresolved facts material to the Applicant's confinement" (*id*. at 104). The Texas Court of Criminal Appeals then denied the application on the trial court's findings without written order (Dkt. 10-21).

In these proceedings, Petitioner raises seven claims for relief.

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal quotation marks and citation omitted). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still

must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under the AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 517 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citation and quotation marks omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th

Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (internal citation and quotation marks omitted).

On factual issues, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

### C. <u>Summary Judgment Standard in Habeas Corpus Proceedings</u>

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see*

*Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III.    ANALYSIS

Parkinson's federal petition lists seven claims for relief. Four of his claims are for ineffective assistance of trial counsel, specifically, for (a) failing to object to State's Exhibit 2 on Confrontation Clause grounds (Claim 2), (b) conceding guilt in closing arguments (Claim 3), (c) failing to investigate a supplemental offense report (Claim 6), and (d) an accumulation of errors (Claim 7). His remaining claims are for ineffective assistance of appellate counsel for failure to raise a self-incrimination claim (Claim 5), erroneous admission by the trial court of Petitioner's medical records in State's Exhibit 2 (Claim 4), and prosecutorial misconduct (Claim 1). Respondent does not argue that Petitioner's claims are subject to dismissal for failure to exhaust his remedies in state habeas proceedings nor that they are time-barred.

### A.    Ineffective Assistance of Trial Counsel (Claims 2, 3, 6, and 7)

#### 1.    Legal Standards

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of

reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (internal citation and quotation marks omitted). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995).[4] The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (internal citations and quotation marks omitted).

---

[4]     *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different"); *Nix v. Whiteside,* 475 U.S. 157, 175 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland* "); *Strickland*, 466 U.S. at 693 ("W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689. A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden. The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

The state habeas court determined that all of Petitioner's ineffective assistance of counsel claims lacked merit because counsel's performance had not prejudiced Petitioner (Dkt. 10-26, at 98). The Court now addresses each claim in turn.

## 2.    Failure to Object to Confrontation Clause Violation (Claim 2)

Petitioner alleges that trial counsel was ineffective for failing to object to State's Exhibit 2 under the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36 (2004). State's Exhibit 2 contained Petitioner's redacted medical records from the Veterans' Administration Medical Center, including a notation by medical staff that Petitioner had presented for medical treatment with worsening depression and "suicidal thoughts that had worsened yesterday after he 'touched my daughter inappropriately' and police got involved" (Dkt. 10-12, at 1). The state habeas court determined that the statements in the records were not "testimonial" under *Crawford* and that no Sixth Amendment violation had occurred (Dkt. 10-26, at 96).

In *Crawford*, the Supreme Court held that the Confrontation Clause does not allow admission of "testimonial statements" from a witness who does not testify at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *Crawford*, 541 U.S. at 59; *see United States v. Santos*, 589 F.3d 759, 762 (5th Cir. 2009). An out-of-court statement is "testimonial" if it was "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Santos*, 589 F.3d at 762 (quoting *Melendez-Diaz v. Mass.*, 557 U.S. 305, 311 (2009)). The circumstances must objectively indicate that the "primary purpose" of the testimonial statement is "to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington,* 547 U.S. 813, 822 (2006); *see Michigan v. Bryant*, 562 U.S. 344, 358-59 (2011) (if the "primary purpose" of the statement is not to create an out-of-court substitute for trial

testimony, then "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause"). Medical records created for a "primary purpose" of medical treatment are not testimonial. *See id.*; *Santos*, 589 F.3d at 763; *Holiday v. Stephens*, 587 F. App'x 767, 777-78 (5th Cir. 2014). A statement that is not testimonial cannot violate the Confrontation Clause. *Brown v. Epps,* 686 F.3d 281, 286 (5th Cir. 2012).

At trial in Petitioner's case, his trial counsel objected to an unredacted version of State's Exhibit 2 under Texas Rule of Evidence 403, after which the court redacted portions of the records (Dkt. 9-10, at 7-12).[5] In the jury's presence, when the prosecution offered the redacted version of State's Exhibit 2, trial counsel stated, "Notwithstanding the previous objections I made and the rulings that were made, at this time I have no objections" (*id*. at 14). The Court then admitted the redacted records (*id*.). Petitioner argues in these proceedings that the admission violated the Confrontation Clause.

Petitioner has not demonstrated that the medical records in State's Exhibit 2 had the "primary purpose" of substituting for the medical professionals' trial testimony. *See Bryant*, 562 U.S. at 358-59. To the contrary, the records demonstrate that they were created for purposes of Petitioner's medical treatment. Along with the statement cited by Petitioner acknowledging inappropriate touching of his daughter, the records contain information regarding his mental status examination, including mood, affect, speech, and

---

[5]     *See* TEX. R. EVID. 403 (permitting exclusion of relevant evidence if its probative value is "substantially outweighed" by a danger of unfair prejudice). Trial counsel argued that "since the doctor's not here to be cross-examined, this would be unfair prejudice" to Petitioner, and further argued that the communications in the record fell within the physician-patient privilege (Dkt. 9-10, at 8).

attitude; notations regarding a social worker's assistance in securing housing for him and paperwork to document the reason for his absence from work during hospitalization; medication lists; outreach to Petitioner's mother; progress notes during his hospitalization; and information about future follow-up appointments (Dkt. 10-11, at 12; Dkt. 10-12, at 1-9; Dkt. 10-13, at 1-5). Therefore, the statements in the records are not "testimonial." *See Santos*, 589 F.3d at 763 (statements made by the defendant for the purpose of receiving medical treatment were not testimonial).[6] Because they were not testimonial, they cannot violate the Confrontation Clause. *See Brown*, 686 F.3d at 286.

Petitioner has not shown that his medical records were created for the purpose of creating out-of-court testimony or that a *Crawford* objection would have succeeded. He therefore fails to demonstrate either that his counsel rendered deficient performance by failing to make the objection or that he was prejudiced. *See Rhoades*, 852 F.3d at 431-32. The state habeas court's determination denying relief was not unreasonable under § 2254.

### 3.     Closing Argument (Claim 3)

Petitioner argues that trial counsel was ineffective when he "conceded guilt" in closing arguments (Dkt. 1, at 12; Dkt. 11, at 3). Petitioner presented this claim to the state habeas court, which determined, "The record does not indicate there was a concession of guilt made by defense counsel in this case" (Dkt. 10-26, at 97).

---

[6]     To the extent Petitioner argues that the statement was "testimonial" because one medical provider was aware that law enforcement was involved in his domestic situation (Dkt. 11, at 2), Petitioner cites no authority supporting his argument. Rather, the authority cited above instructs the Court to discern the "primary purpose" of the statements in the records.

In his closing argument at the guilt-innocence phase of trial, Petitioner's counsel stated:

> I mean, obviously something happened, I'm not going to stand up here and say, well, no, nothing happened here. Something happened, but does the State of Texas have enough evidence to prove to you . . . that what did happen was what they're saying happened in the jury charge[?]

(Dkt. 9-10, at 115). Petitioner argues that his counsel "might as well have said [Petitioner] is guilty but did the State prove it" (Dkt. 3, at 4). However, counsel's acknowledgement that "something happened," and his argument that the prosecution had failed to prove the particular elements of each count, was a reasonable strategic decision to remind the jury of the prosecution's high burden of proof.[7] Given the victim's testimony and other evidence presented against Petitioner, counsel's strategy was well within the "wide range" of prevailing professional norms and is due a "strong degree of deference." *See Strickland*, 466 U.S. at 689; *Rhoades*, 852 F.3d at 432.

Petitioner has not demonstrated that counsel rendered deficient performance nor that he was prejudiced. The state habeas court's determination that counsel did not concede his client's guilt was not unreasonable under the standards of § 2254(d).

### 4.    Failure to Investigate Supplemental Offense Report (Claim 6)

Petitioner argues that trial counsel was ineffective for his failure to "conduct a reasonable investigation" into a supplemental offense report that "would have revealed

---

[7]    *See* Dkt. 10-26, at 100 (trial counsel avers in his state habeas affidavit, "The evidence against the Applicant was very strong, and I could not expect the jury to ignore the damaging material admitted during trial. The only convincing argument available was to explain that the evidence was not sufficient to convict the [A]pplicant *as charged*. The jury, however, disagreed.") (emphasis original).

the alleged victim['s] . . . post-incident medical examination report" (Dkt. 1, at 13).

Petitioner maintains that the offense report indicated that Investigator Vargas had access

to the victim's medical records, and that those records were exculpatory because they

found no penetration of the victim's sexual organ (*id*.). The state habeas court denied

relief on this claim, determining that "[t]he lack of a physical finding for the sexual

assault was a factor argued during trial" but that "under Texas law, it is not dispositive of

the ultimate issue as to whether the applicant committed the offense charged" (Dkt. 10-

26, at 97).

As held in *Strickland*, "counsel has a duty to make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary."

*Strickland*, 466 U.S. at 691; *see Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014);

*Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "In any ineffectiveness case, a

particular decision not to investigate must be directly assessed for reasonableness in all

the circumstances, applying a heavy measure of deference to counsel's judgments."

*Strickland*, 466 U.S. at 691. The reasonableness of counsel's investigation decisions

"can be assessed by taking into account the defendant's own statements, actions, and

information supplied by the defendant; whether counsel has reason to believe that

pursuing certain investigations would be fruitless or even harmful; resource

constraints; and whether the information that might be discovered would be of only

collateral significance." *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (internal

quotation marks, citations, and footnotes omitted). To establish prejudice for failure to

investigate, "a petitioner must allege with specificity what the investigation would have

revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

Petitioner's claim regarding the investigation of the supplemental offense report is not supported by the record. Although Petitioner argues that the offense report should have led his counsel to the victim's medical records, he also acknowledges that his counsel argued to the jury concerning her records (Dkt. 1, at 13). In closing arguments, trial counsel argued that the medical evidence did not support the victim's testimony because it contained no evidence of bruising or sexual activity:

> [W]hat caused doubt to me on [Count Three regarding penetration of the victim's sexual organ by Petitioner's finger] is there's no medical evidence of that. . . . [S]he testified, yeah, I was taken to the doctor and the doctor examined me but he couldn't find any evidence of any bruising or basically where she had had sex.

(Dkt. 9-10, at 110-11). Petitioner fails to show how he might have benefitted from additional investigation by trial counsel or otherwise to demonstrate prejudice. His ineffective assistance of counsel claim therefore fails. *See Miller*, 420 F.3d at 361; *Woodfox*, 609 F.3d at 808. The state habeas court's denial of Petitioner's claim was not unreasonable under § 2254(d).

### 5.    Cumulative Errors of Trial Counsel (Claim 7)

Petitioner argues that the cumulative effect of counsel's errors rendered his assistance constitutionally ineffective. In addition to the claims discussed above, Petitioner argues that counsel should have interviewed his doctor and psychiatric resident at the Veterans' Administration Medical Center, should have subpoenaed the doctors who conducted the victim's post-incident examination, should have objected to Investigator

Vargas' testimony, should have filed unspecified pretrial motions, and should have conducted an investigation "to obtain impeachment evidence of State's witnesses" including Petitioner's ex-wife (Dkt. 1, at 14). The state habeas court determined "as a matter of law" that "trial counsel was not ineffective, in that, there is no evidence that the alleged deficient performance of the Applicant's trial counsel in any way prejudiced his case" (Dkt. 10-26, at 98). The court also determined that there was "no evidence that the sexual assault was engineered by a vindictive spouse" or "material brought to counsel's attention that would have a bearing on [Petitioner's ex-wife's] credibility" (*id*.). Regarding pretrial motions, the state habeas court determined, "[t]here is no evidence of anything counsel could have filed prior to trial that would have made any difference in the outcome" (*id*.).

As stated above, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Newbury*, 756 F.3d at 873. Regarding the medical evidence (in particular, interviewing or subpoenaing medical providers), Petitioner has failed to show prejudice under *Strickland* because, as stated in the previous section, his counsel already had argued to the jury that the medical report did not provide evidence of sexual assault. Although Petitioner alleges his counsel's investigation was improperly limited to the State's file (Dkt. 11, at 6), he identifies no specific information that additional investigation would have revealed. As for pretrial motions, Petitioner does not specify which motions should have been filed, and does not provide any basis for a holding that

such motions could have changed the outcome of his trial. These claims therefore lack merit. *See Hoffman*, 752 F.3d at 440; *Miller*, 420 F.3d at 361; *Woodfox*, 609 F.3d at 808.

Petitioner also faults trial counsel for failing to object to Investigator Vargas' testimony about the medical records, which Petitioner states was outside of Vargas' expertise, and to preserve the issue for appellate review. Petitioner fails to show deficient performance or prejudice because he fails to articulate any basis for an objection to Vargas' testimony. The medical records about which Vargas was testifying already had been admitted into evidence before Vargas took the stand, and Petitioner does not identify any portion of Vargas' testimony that involved specialized knowledge. *See* Dkt. 9-10, at 61-76 (Vargas testimony regarding medical records).

Finally, regarding the potential impeachment of his ex-wife, Petitioner alleges that he had told his trial counsel that his ex-wife was having an affair during their marriage, that she was untruthful on the stand about the timing of the affair, and that her credibility could have been "ruined" and the impact of her testimony against Petitioner could have been minimized. *See* Dkt. 11, at 7 (making multiple allegations that his ex-wife made false statements about her romantic relationships, financial matters, and other topics). He cites to trial counsel's notes from a visit with Petitioner, which were attached to Petitioner's state habeas application, as evidence that Petitioner advised counsel of the issues related to his ex-wife's credibility (Dkt. 3, at 7-8). However, the fact that Petitioner raised the issue with his counsel does not suffice to show that his counsel failed to investigate the issues, nor that an investigation into the topics would have yielded additional evidence that could have changed the outcome of his trial. In fact, counsel

already had argued to the jury that Petitioner's ex-wife was motivated to testify against Petitioner by financial considerations and her desire for a divorce (Dkt. 9-10, at 113). Petitioner has failed to show that he was prejudiced by trial counsel's alleged failure to conduct additional investigation into the matter. *See Hoffman*, 752 F.3d at 440.

For all of the reasons above, Petitioner has not demonstrated that the state court's denial of his claims for ineffective assistance of trial counsel were contrary to or an unreasonable application of clearly established law, nor has he demonstrated an unreasonable application of the law to the facts. *See* 28 U.S.C. § 2254(d).

### B.     Ineffective Assistance of Appellate Counsel (Claim 5)

Petitioner claims that appellate counsel rendered ineffective assistance.    In particular, Petitioner faults his appellate counsel for not bringing a claim that his right against self-incrimination had been violated by the use at trial of Petitioner's previous statement regarding the victim's credibility (Dkt. 1, at 12-13).   Petitioner presented this claim to the state habeas court, which denied relief.

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Dorsey v. Stephens*, 720 F.3d 309, 319-21 (5th Cir. 2013).   Claims of ineffective assistance of counsel on appeal are governed by *Strickland* standards, which require a petitioner to show that counsel's performance was deficient and that the petitioner was prejudiced.    *Id.* at 319 (citing *Strickland*, 466 U.S. at 687). As with *Strickland* claims regarding trial counsel, the court's review is "highly deferential," and "doubly deferential" on habeas review.    *Id.*   A habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the range of

reasonable professional assistance." *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (internal quotation marks and citation omitted).

Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[] out weaker arguments on appeal'" and focus on key issues. *Higgins*, 720 F.3d at 265 n.41 (quoting *Jones*, 463 U.S. at 751-52).

In this case, Petitioner took the stand at the punishment phase of his trial (Dkt. 9-11, at 20-61). On cross-examination, he testified that his daughter had lied on the stand about Petitioner's conduct "[b]ecause her mother made her lie" (*id*. at 43-44). The prosecutor then approached the bench and, out of the jury's hearing, stated that he wanted to use for impeachment purposes an oral statement that Petitioner had made to Investigator Vargas, after receiving *Miranda* warnings, in which he told Vargas that "[the victim] would never lie" (*id*. at 50-51). The court ruled that the State could not use the statement but could "ask him a question has he ever told anybody else that" (*id*. at 51). In front of the jury, and in response to a question from the prosecutor, Petitioner then testified that he had told Investigator Vargas that he did not think that his daughter would have lied. *See id*. at 59 ("I said I don't think [she] would lie about this").

In these habeas proceedings, Petitioner argues that the questioning from the prosecution regarding his prior statement to Vargas violated his constitutional right against self-incrimination and that appellate counsel was ineffective for failing to raise the issue on direct appeal (Dkt. 3, at 6-7; Dkt. 11, at 11). However, clear authority holds that, once a criminal defendant takes the stand to testify, the defendant may be cross-examined for impeachment purposes. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000) ("when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness'" (quoting *Brown v. U.S.*, 356 U.S. 148, 154 (1958)); *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (prosecutor's comment on a defendant's pre-arrest silence was constitutionally permissible for impeachment purposes because a defendant had voluntarily taken the stand at trial). Although impeachment based on a defendant's post-*Miranda* silence to demonstrate guilt is impermissible, *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976), due process does not prohibit impeachment by cross-examination to inquire into prior inconsistent statements. *Puckett v. Epps*, 641 F.3d 657, 666 (5th Cir. 2011).

> "Such questioning [on cross-examination regarding prior inconsistent statements] makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all."

*Id.* (quoting *Anderson v. Charles*, 447 U.S. 404, 408 (1980)).

Given this authority, Petitioner has not demonstrated that his appellate counsel failed to raise an argument that would have succeeded on appeal.[8] As stated above, appellate counsel is not required to raise every nonfrivolous claim. *Smith*, 528 U.S. at 288. Petitioner fails to show either that counsel rendered deficient performance or that he was prejudiced. *See id.*; *Higgins*, 720 F.3d at 265. The state habeas court's determination that his claim lacked merit was not unreasonable under § 2254.

## C. <u>Prosecutorial Misconduct (Claim 1)</u>

Petitioner claims that prosecutors at his trial violated his due process rights when they failed to disclose exculpatory evidence, in particular, the supplemental offense report discussed above. As in his ineffective assistance of counsel claim, Petitioner argues that the offense report was exculpatory because it refers to medical records that found no physical evidence of sexual assault (Dkt. 1, at 11; Dkt. 3, at 2-3). He further argues that the prosecution had a duty to disclose the records because, after the victim testified that Petitioner had sexually assaulted her, the defense could have used the records to impeach her testimony (Dkt. 3, at 3). Petitioner presented this claim to the state habeas court, which denied relief.

The Due Process Clause requires the prosecution to disclose evidence that is favorable to the defense and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). This duty to disclose "extends to all evidence known not just to the

---

[8] Petitioner also takes issue with the state habeas court's instruction for trial counsel to respond to this claim, rather than appellate counsel (Dkt. 3, at 6-7; Dkt. 11, at 11). This argument is not material to the issues before the Court. For the reasons explained above, Petitioner's claim for ineffective assistance of appellate counsel fails on the trial record, without reference to trial counsel's affidavit.

prosecutors, but 'to the others acting on the government's behalf in the case, including the police.'" *Floyd v. Vannoy*, 894 F.3d 143, 161-62 (5th Cir.), *cert. denied,* 139 S. Ct. 573 (2018) (quoting *Kyles*, 514 U.S. at 437). Impeachment evidence, such as the evidence at issue in this case, "is favorable *Brady* evidence." *Id.* at 163; *see U.S. v. Bagley*, 473 U.S. 667 (1985). Evidence is material under *Brady* "where it simply demonstrates 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Floyd*, 894 F.3d at 166 (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)).

As held above in the context of Petitioner's *Strickland* claim, the record does not support Petitioner's contention that medical evidence was withheld from him. Rather, as stated in trial counsel's affidavit (Dkt. 10-26, at 100), counsel reviewed the records and argued to the jury that they did not corroborate the victim's allegations. *See* Dkt. 9-10, at 110-11 (closing arguments). Because Petitioner has failed to demonstrate that the prosecution failed to disclose the evidence at issue, his due process claim fails. *See Floyd*, 894 F.3d at 166.[9]

Petitioner has not demonstrated that the state habeas court's denial of relief was unreasonable under § 2254.

---

[9] To the extent Petitioner brings a claim regarding alleged perjury by the victim (*see* Dkt. 1, at 11), his claim also fails. Petitioner presents no argument on the point and, among other issues, has failed to demonstrate that the victim's testimony was false or that the prosecution knew it was false. *See Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014) (essential elements of a claim under *Giglio* or *Napue* are that the testimony was actually false, that the prosecution knew it was false, and that the testimony was material) (citing, *inter alia*, *Giglio v. U.S.*, 405 U.S. 150 (1972); *Napue v. Ill.*, 360 U.S. 264 (1959); *Pyles v. Johnson*, 136 F.3d 986 (5th Cir. 1998)).

### D.  Erroneous Admission of Medical Records (Claim 4)

Petitioner argues that the trial court erroneously admitted State's Exhibit 2, which contained Petitioner's redacted medical records, over his trial counsel's hearsay objection.  He maintains that the records contained notations regarding Petitioner's substance dependence, including that he was contemplating suicide due to addiction to synthetic marijuana and that his treatment team had suggested a treatment program (Dkt. 3, at 6; Dkt. 11, at 10).  He argues that the court should not have admitted the records because, under Texas Rule of Evidence 509, evidence regarding voluntary drug treatment is not admissible in criminal proceedings.[10]

A federal habeas court does not sit as "super state supreme court" to review state evidentiary rulings.  *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988); *see Hernandez v. Dretke*, 125 F. App'x 528 (5th Cir. 2005).

> An evidentiary error in a state trial justifies federal habeas corpus relief only if the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.  The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire trial.

*Bridge*, 838 F.2d at 772 (internal quotation marks and citations omitted).  Additionally, to obtain relief, a habeas petitioner must show that the trial court's error had a "'substantial

---

[10]  *See* Dkt. 1, at 12 ("The fact that the Petitioner was voluntarily being treated and evaluated for drug addiction rendered the [medical] records inadmissible as evidence.  The trial court erred by allowing inadmissible hearsay into evidence and excluding portions of the records that showed they were inadmissible").  In 2014, when Petitioner was tried, Texas Rule of Evidence 509(b) provided, "There is no physician-patient privilege in criminal proceedings. However, a communication to any person involved in the treatment or examination of alcohol or drug abuse by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse is not admissible in a criminal proceeding."

and injurious effect or influence in determining the jury's verdict.'" *Hernandez*, 125 F. App'x at 529 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

In this case, Petitioner has not demonstrated an "extreme" evidentiary error that deprived him of fundamental fairness. *See Bridge*, 838 F.2d at 772. As Respondent argues (Dkt. 8, at 16-18), the majority of the records did not pertain to drug treatment. The state habeas court's denial of relief on this claim was not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

## IV.  CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks

omitted).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

V.   **CONCLUSION**

For the reasons stated above the Court **ORDERS** that:

1.     Respondent's motion for summary judgment (Dkt. 8) is **GRANTED**.  The petition for a writ of habeas corpus (Dkt. 1) is **DISMISSED**.

2.     A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 28th day of February, 2019.


_____
George C. Hanks Jr.
United States District Judge